UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| EZCKHOM JACQUES, | |
|---|---|
| *Plaintiff*, | Civil No. 3:12-CV-1798 (JBA) |
| v. | |
| OFFICER WILLIAMS, | |
| *Defendant*. | December 4, 2018 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ezckholm Jacques ("Plaintiff") files this lawsuit against Correctional Officer Williams ("Defendant"), claiming that Defendant sexually assaulted him while Plaintiff was housed at the New Haven County Correctional Center on December 23, 2010. The Court has construed Plaintiff's action as bringing Eighth Amendment claims for excessive force and deliberate indifference, as well as state law claims of intentional infliction of emotional distress, assault, and battery. Defendant now moves for summary judgment (Mot. Summ. J. [Doc. # 49]), arguing that Plaintiff lacks any record evidence that could establish that Defendant was correctly identified as Plaintiff's assailant.

I. **Background**

A. **Undisputed Facts**

On December 23, 2010, Plaintiff assaulted a Connecticut Department of Corrections ("DOC") officer at the New Haven Corrections Center ("New Haven CC") in the throes of a manic episode. (Parties' L.R. Stmts. [Doc. ## 49-2, 56] ¶ 1; Compl. [Doc. # 1] ¶ 1.) This incident began at the beginning of the prison's second shift of the day, either around or shortly before 4:11 p.m. (L.R. Stmts. ¶ 3.) Plaintiff resisted DOC staff's efforts to secure him, resulting in Plaintiff being forcibly removed from the housing unit and taken first to the Foxtrot Housing Unit dayroom, then to the

Medical Unit, and then to a different DOC facility—Northern Correctional Institute. (*Id.* ¶¶ 4–5; Attach. 1 (Incident Report) to Ex. 2 to Def.'s Mem. Supp. Mot. Summ. J. [Doc. # 49-1] at 3.) The Connecticut state police charged Plaintiff with assault on a public safety officer, breach of the peace, interfering with a police officer, and failure to submit to fingerprinting; Plaintiff pled guilty to Assault of Public Safety personnel and received a prison sentence of three years and five years of special parole. (L.R. Stmts. ¶¶ 6–7.)

On March 7, 2012, New Haven CC received an "administrative remedy form" filed by Plaintiff alleging that New Haven CC staff had sexually assaulted him during the Incident. (*Id.* ¶ 8.) DOC authorized a Security Division investigation, which concluded that Plaintiff's allegations of sexual assault were unfounded. (*Id.* ¶ 9.)

Defendant Williams was assigned to the New Haven CC from December 1999 to June 2017 and, at the time of the Incident, as a correctional officer working the first shift. (*Id.* ¶¶ 12-13.) The first shift hours are from 7:45 a.m. to 4:00 p.m. (*Id.* ¶ 14.) The second shift officers have roll call at 3:45 pm and relieve the first shift staff at some point between 3:50 and 4:00, depending on how long roll call takes. (*Id.* ¶ 15.) A correctional officer who stayed at work for more than one-to-two minutes after the end of his shift could put in for overtime in 15-minute increments. (*Id.* ¶ 17.) Defendant worked the first shift on the day of the Incident, and Defendant did not seek any overtime on the day of the Incident. (*Id.* ¶¶ 19, 21.)

B. **Plaintiff's Affidavit**[1]

---

[1] Plaintiff filed this action as a self-represented prisoner. (*See* Compl. at 1.) The Court subsequently appointed pro bono counsel to represent him. (Order of Appointment of Counsel and Scheduling Order [Doc. # 35].)

Plaintiff avers that during the Incident, the corrections staff escorted him to the Foxtrot Housing Unit Dayroom. (Ex. 1 (Affidavit of Ezchholm Jacques) to Mem. Opp'n Mot. Summ. J. [Doc. # 55–1] ¶ 7.) While in the dayroom, Plaintiff states that the staff placed a kitchen hat over his head to prevent him from spitting on them, even though Plaintiff denied that he had been spitting. (*Id.* ¶ 8.) Plaintiff further avers that an officer turned a hand-held video camera on, stated for the recording that the officer was signing on, and asked Plaintiff to state his name and inmate number for the camera, which he did. (*Id.* ¶ 9.) At no time contemporaneously did the correctional officer say that he was unable to record for any reason, and Plaintiff believed that he continued to video record the events as they unfolded. (*Id.*)

While the video was running, Plaintiff claims that he was asked by the corrections officer in charge what happened in the cell block, and that Plaintiff replied that he did not know what happened. (*Id.* ¶ 10.) Plaintiff maintains that he then heard snickering from the corrections officers behind him and the sound of zippers unzipping. (*Id.* ¶¶ 11-12.) Plaintiff looked to his right and saw a black man's penis, which he deduced to be Defendant's because Defendant was the only black officer that Plaintiff saw in the room at the time. (*Id.* ¶ 12.) Plaintiff alleges that he felt something hitting his back and screamed for Defendant to "get [his] penis off [Plaintiff's] back." (*Id.* ¶ 13.)

Plaintiff states that the officer in charge then ordered: "[Plaintiff's] not being compliant, spray him boys[,]" and an officer then sprayed Plaintiff with what Plaintiff believed to be a lemon-scented cleaner, based on the smell of the substance and the fact that it sounded as if it was sprayed from a spray pump bottle, as opposed to the aerosol can from which mace would have been sprayed. (*Id.* ¶¶ 14-15.) Plaintiff asserts that the officers then jumped on him and he lost consciousness, later waking in four point restraints in a bed in the medical unit. (*Id.* ¶ 16.)

Plaintiff has reviewed the video recordings of portions of the incident that were made available to him and used in the creation of the incident report, and explains that "[t]he beginning of the incident, where I was sexually assaulted and sprayed with lemon scented cleaner, is not included on the video provided." (*Id.* ¶ 19.) "At the beginning of the video, a Corrections Officer is heard on the audio of the video saying 'Officer Tracey, resigning on, 4:20, December 23, 2010, Bravo Unit, sorry Foxtrot center day room.'" (*Id.*) Officer Tracey "does not say my name or inmate number on the audio of the video recording." (*Id.*) At oral argument, Defendant did not dispute Plaintiff's characterization of this portion of the video.

## II. Defendant's Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

**B. Excessive Force**

Defendant asserts that summary judgment should be granted in his favor because the record shows there to be no genuine issue of material fact that Defendant was not present at the New Haven CC at the time of the Incident, and thus Defendant was not personally involved in any constitutional violations. (Def.'s Mem. Supp. Mot. Summ. J. at 6-7.) In order to recover damages for a violation of constitutional rights under 42 U.S.C. § 1983, a plaintiff must show the personal involvement of the defendant in the alleged constitutional deprivation as a prerequisite. *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246, 254 (2d Cir. 2001) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

In support of his position that he could not have had personal involvement, Defendant proffers his affidavit, his timesheet, his payroll record, the "West Dorm logbook," and the first page of the Incident Report, which lists the staff members present during the Incident, to show that there is no credible evidence to establish that Defendant was ever present during the Incident. (Def.'s Mem. Supp. Mot. Summ. J. at 7.) Defendant states in his sworn affidavit that he was not personally involved in the Incident. (Ex. 1 (Affidavit of Defendant Troy Williams) to Def.'s Mem. Supp. Mot. Summ. J. [Doc. # 49-3] ¶ 15.)

Upon contextual analysis, this evidence falls short of being dispositive. With regard to his location, Defendant states that he "would have exited the building by 4:00 [p.m.]" and that he "would not have even been inside the building when [the Incident] occurred." (Williams Aff. ¶¶ 10, 15.) As Plaintiff correctly notes, this does not definitively state that Defendant did, in fact, exit the building at 4:00 p.m., before the Incident occurred at 4:11 p.m. (Mem. Opp'n Mot. Summ. J.

[Doc. # 55] at 7.) A mere assertion that Defendant "would have left" at 4:00 p.m., without any corroborative facts showing this must be true, fails to show that there is no genuine issue of material fact as to whether Defendant actually *did* leave at 4:00 p.m.

Similarly, Defendant proffers his timesheet (Attach. 1 to Ex. 1 to Def.'s Mem. Supp. Mot. Summ. J.) and payroll record (Attach. 3 to Ex. 1 to *id.*) each showing that he did not receive overtime pay on the day of the Incident. Defendant asserts that these documents show that he was not at New Haven CC at the time of the Incident. (Def.'s Mem. Supp. Mot. Summ. J. at 6-7.) But as Plaintiff notes, these records merely show that Defendant was not being *paid* for being at New Haven CC at the time of the Incident, while not speaking to Defendant's actual location at the time in issue. (Mem. Opp. Mot. Summ. J. at 7.) Moreover, a reasonable jury might conclude that if Defendant had committed the alleged sexual assault, he would have been unlikely to put in for overtime.

Because all inferences must be construed in the Plaintiff's favor, and in the absence of any evidence showing the procedure by which New Haven CC employees sign out at the end of the shift and the DOC policy or regulation controlling what they are required to do immediately thereafter, it is not pure speculation that Defendant remained on at New Haven CC at the outset of the Incident even though he was not paid for the time, and a reasonable factfinder is not required to infer that Defendant was out of the building before the Incident based on the lack of overtime pay alone.

The logbook—which Defendant cites as support for his position that he was not in the New Haven CC after 4:00 p.m.—similarly says nothing conclusive about Defendant's location at that time. It appears to show that the second shift individuals signed in at 4:00 p.m. (Attach. 2 to Ex. 1 to Def.'s Mem. Supp. Mot. Summ. J.) This says nothing about Defendant's location. No official

policy statement or affidavit is offered stating in essence that the second shift could not sign in until the first shift officers had left the facility. Thus, Defendant's assertion that the fact that the second shift signing in meant that the first shift had left lacks corroborative evidentiary foundation in the record.

The Incident Report does support Defendant's allegation that he was not present during the Incident, in that it lists the names of staff members present, and Defendant's name is not among those listed. (Attach. 1 (Incident Report) to Ex. 2 to Def.'s Mem. Supp. Mot. Summ. J. at 1.) Each of the responding officers is labeled as "Reporting Employee," "Responding Employee," or "Responding Supervisor." (*Id.*) If Defendant had been there in an unofficial capacity, he would not have fit in any of these categories and presumably would not have been listed. As noted in the Supervisor's supplemental report, the beginning of the Incident was not videotaped, (*id.* at 4), which would have definitively established whether Defendant was or was not present in any capacity during this initial period. No affidavit of any responding officer or other witness is offered to clarify definitely that Defendant was never present during the unrecorded portion of the events.

Nonetheless, given Defendant's affirmative statement in his affidavit that he was not personally involved during the Incident, combined with the accompanying documentary evidence consistent with his assertion, Defendant has met his initial burden of production under Rule 56(a), and the burden of proof shifts to Plaintiff.

An affidavit used to oppose a motion must be made on "personal knowledge." Fed. R. Civ. P. 56(c)(4). Plaintiff asserts in his affidavit that he saw a black man's penis to his right and that he knew this to be Defendant's because "[Defendant] was the only black officer [Plaintiff] saw in the room at the time." (Jacques Aff. ¶ 12.)

7

Defendant does not dispute the evidence that the first few minutes of Plaintiff's detention in the dayroom were not recorded, although a videographer officer was present to do so. (*See* Incident Report at 4 ("the start of the incident in Bravo Unit was not recorded due to a dead battery.").) Plaintiff asserts that the DOC's failure to properly record and/or maintain the recording of this portion of the events "is sufficient grounds *alone*" to enough to deny Defendant's motion, citing to *Alston v. Pafumi* in support of this proposition. (Mem. Opp. Mot. Summ. J. at 10 (emphasis added).) *Alston* does not stand for quite so broad a principle. In that case, the court held that where there was an affidavit stating that the police used excessive force, *and* no video evidence contradicting that affidavit, the plaintiff raised a genuine dispute of material fact. *See Alston v. Pafumi*, No. 3:09-CV-01978 (VAB), 2016 WL 81785, at *6 (D. Conn. Jan. 7, 2016) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)), clarified on denial of reconsideration, No. 3:09-CV-01978 (VAB), 2016 WL 447423 (D. Conn. Feb. 4, 2016). Notwithstanding Plaintiff's overly generous reading of *Alston*, this case like *Alston* involves an alleged assault, about which Plaintiff is prepared to testify, and which Defendant denies occurred, but which Defendant has not shown could not have happened, through video evidence or any other dispositive evidence of record.

In sum, the Court is faced with two dueling sworn affidavits, both made on the basis of personal knowledge, claiming contradictorily that the Defendant was not present and that the Defendant was present at the place and time of the alleged sexual assault. While the additional record evidence cited by Defendant does not *contradict* his own affidavit, neither does it definitively answer the question of where he was at the time of the alleged assault or why he could not have been where Plaintiff places him.

"If reasonable minds could differ as to the import of the evidence ... and '[i]f ... there is any evidence in the record from any source from which a reasonable inference in the [nonmoving

party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *R.B. Ventures, Ltd.* 112 F.3d at 59 (alterations in original). Thus, the determination of whether Defendant was correctly identified by Plaintiff as being in the room at the time of the assault and as being Plaintiff's assailant requires weighing the credibility of each party's testimony, together with the additional proffered evidence. This factual determination cannot be made by the Court in the context of a motion for summary judgment and must instead be made by a factfinder at trial. Because a reasonable jury could choose to credit either Plaintiff's or Defendant's testimony in the context of the rest of the evidence, there is a genuine dispute of material fact as to whether Defendant was present and sexually assaulted Plaintiff, and therefore Defendant's Motion for Summary Judgment is denied. Because Plaintiff's federal claims survive, the Court will retain supplemental jurisdiction over Plaintiff's state law claims, which are based on the same factual allegations.

### III. Conclusion

For the reasons set forth above, the Court DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of December 2018.